IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:17-cr-00102-IM |
| v. | **OPINION AND ORDER** |
| **MARCUS ANTHONY DAVIS, JR.**, | |
| Defendant. | |

**IMMERGUT, District Judge.**

This matter comes before the Court on Defendant Marcus Davis, Jr.'s motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 67. The Government opposes Mr. Davis's motion on the merits. For the reasons discussed below, the motion is denied.

## BACKGROUND

Last year, Mr. Davis pled guilty to the crime of being a felon in possession of a firearm in Case No. 20-cr-00032 and admitted to violating supervised release conditions imposed in Case No. 17-cr-00102-IM. ECF 67 at 3. At his sentencing on June 15, 2020, the Court imposed a sentence of 69 months for the felon in possession conviction, Case No. 20-cr-00032, and a concurrent 24-month sentence for the supervised release violations in Case No. 17-cr-00102.

PAGE 1 – OPINION AND ORDER

ECF 67 at 3–4; Case No. 20-cr-00032, ECF 27. Mr. Davis is currently serving his sentence at FCI Sheridan and has a projected release date of November 30, 2024. ECF 67 at 4; ECF 68 at 2.

On October 7, 2020, Mr. Davis filed a request for relief with the warden, which was denied on November 23, 2020. ECF 67 at 45. On December 27, 2020, Mr. Davis tested positive for COVID-19. *Id.* at 68. He was transferred to the make-shift "COVID unit" at FCI Sheridan, which "consisted of mattresses on the floor of the prison's gymnasium" and included a single bathroom for the 30 to 40 men in the gym. *Id.* at 11. On January 8, 2021, Mr. Davis was deemed to meet the CDC "criteria for release from isolation in accordance w[ith] the [BOP] pandemic response plan" and returned to his normal unit. *Id.* at 46; *see also id*. at 12.

Mr. Davis argues that extraordinary and compelling circumstances justify his compassionate release because of (1) the COVID-19 pandemic, (2) his medical conditions, including obesity, hypertension, uncontrolled type 2 diabetes, high cholesterol, and the lasting effects of his recent bout with COVID-19, which he asserts render him particularly vulnerable should he again contract COVID-19, (3) the lack of medical treatment and monitoring of Mr. Davis's medical conditions while at FCI Sheridan, which he asserts substantially diminishes his ability to provide necessary self-care and puts his life at risk, and (4) the § 3553(a) factors as applied to this case. ECF 67 at 1–2.

**STANDARDS**

**A. Modifying a Term of Imprisonment for Compassionate Release**

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, under 18 U.S.C. § 3582(c)(1)(A), courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of

PAGE 2 – OPINION AND ORDER

imprisonment)" where "extraordinary and compelling reasons warrant" reduction, or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Director of the Federal Bureau of Prisons ("BOP") could move a district court under 18 U.S.C. § 3582(c)(1)(A) for the compassionate release of a federal prisoner. The First Step Act of 2018 ("FSA") amended § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. *See* First Step Act of 2018, Section 603(b), Pub. L. 115-391, 132 Stat. 5194 (2018). Section 3582(c)(1)(A) now authorizes a district court to reduce a defendant's sentence either: (1) upon motion by the Director of the BOP; or (2) upon motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Where this exhaustion requirement is met and a defendant is seeking a sentence reduction under § 3582(c)(1)(A)(i), a court may grant the motion if it finds that: (1) "extraordinary and compelling reasons warrant such a reduction"; and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). If the court finds that both criteria have been met, the court must consider the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable. *Id.*

The defendant bears the burden of proof to show that he is eligible for a sentence reduction and that the reduction is appropriate. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. 2020); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020). Even if there are extraordinary and compelling reasons, the grant of a motion for compassionate release is in the sentencing court's discretion. *United States*

*v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020); *United States v. Webster*¸ No. 3:91cr138 (DJN), 2020 WL 618828, at *5 (E.D. Va. Feb. 10, 2020).

## DISCUSSION

### A. Exhaustion

The Government concedes that Mr. Davis has exhausted his administrative remedies. ECF 68 at 3; *see also* ECF 67 at 45. Accordingly, this Court considers this requirement satisfied.

### B. Extraordinary and Compelling Reasons

Congress never defined the phrase "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 28 U.S.C. § 994(t). Congress directed the Sentencing Commission to define the phrase. *Id*. The Commission did so prior to the passage of the First Step Act but has not since updated the policy statement. *See* U.S.S.G. § 1B1.13 cmt. n.1. In subsections (A)–(D) of an Application Note to U.S.S.G. § 1B1.13, the Commission enumerated four "reasons" that qualify as "extraordinary and compelling":

> (1) the medical condition of the defendant (defined as whether the defendant is suffering from a terminal illness; or is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover");
>
> (2) the age of the defendant (defined as whether the defendant is at least sixty-five years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less);

PAGE 4 – OPINION AND ORDER

>(3) family circumstances (defined as the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner); and
>
>(4) any other extraordinary and compelling reason determined by the Director of the BOP. *Id.*

Most district courts, including this Court, that have considered the present applicability of the policy statement have held that it "provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)(i)." *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019); *see also, e.g., United States v. Dana*, 467 F. Supp. 3d 962, 965 (D. Or. 2020) (finding that U.S.S.G. § 1B1.13 as currently written "does not constrain the Court's ability to find extraordinary and compelling reasons").

This Court acknowledges the exceptional nature of the COVID-19 global health crisis. Even so, compassionate release remains "rare" and "extraordinary," and courts routinely deny claims from inmates absent a showing of truly exceptional circumstances. *United States v. Hamman*, 3:16-cr-185-SI, 2020 WL 3047371, at *5 (D. Or. June 8, 2020).

Mr. Davis argues his circumstances warrant compassionate release because his type 2 diabetes, obesity, hypertension, and hyperlipidemia put him at a high risk of serious COVID-19 complications and because FCI Sheridan is not properly monitoring his medical conditions. ECF 67 at 7–10, 71. Mr. Davis takes prescription metformin for his diabetes, Lisinopril for hypertension, and Atorvastatin for his hyperlipidemia. *Id.* at 7, 76. When Mr. Davis had his preventive health visit on September 15, 2020, he had a BMI of 37.1. *Id.* at 85; ECF 69 at 9.

PAGE 5 – OPINION AND ORDER

After receiving weight loss counseling, Mr. Davis lost 11 pounds and now has a BMI of 35.4. *See* ECF 69-1 at 12, 35, 51; ECF 67 at 7. Mr. Davis states that he has only seen a doctor once and has only done blood testing once since arriving at FCI Sheridan, despite the fact that the blood test revealed abnormally high cholesterol, triglycerides, and A1C. ECF 67 at 7–8; *see also* ECF 69-1 at 71. Mr. Davis states that this result indicates that he likely has nonalcoholic fatty liver disease and is at a high risk of simple fatty liver and nonalcoholic steatohepatitis and liver fibrosis and needs further and closer evaluation and treatment of his diabetes and diabetes complications. ECF 67 at 10. Mr. Davis argues that FCI Sheridan has not provided any follow-up care and that due to the lockdown conditions, Mr. Davis cannot provide self-care such as exercising, eating properly, testing his blood sugar, or adjusting his medications. *Id*.

While the Court is sympathetic to Mr. Davis's health concerns, the record shows that he is receiving medication for his conditions and has been able to lose weight during the COVID-19 lockdown. Mr. Davis has already had COVID-19 and recovered, despite his medical conditions which place him at an increased risk for severe COVID-19 illness. Mr. Davis is also 36 years old, which does not put him in a high-risk age group. Some courts have concluded that where a defendant has already contracted COVID-19 and recovered, the dangers "associated with COVID-19 are not a ground for relief." *United States v. Kapeli*, No. CR 16-00172 JMS (01), 2020 WL 5665057, at *4 (D. Haw. Sept. 23, 2020) (collecting cases); *see also United States v. Alvarez*, No. 3:18-CR-158-SI-01, 2020 WL 3047372, at *4–5 (D. Or. June 8, 2020) (considering recovery from COVID-19 in denying compassionate release to defendant with Type 2 diabetes and severe obesity who had served less than 20 percent of his sentence). As of the time of writing this Opinion, the Center for Disease Control and Prevention notes that reinfections are "rare." *Myths and Facts about COVID-19 Vaccines*, CDC.gov,

PAGE 6 – OPINION AND ORDER

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/facts.html (last updated March 11, 2021). Additionally, vaccinations have begun at FCI Sheridan. ECF 68 at 5. Based on Mr. Davis's age, risk factors, ability to lose weight after receiving weight counseling, and the fact that he has already recovered from COVID-19, this Court does not find that extraordinary or compelling reasons warrant granting his motion for compassionate release.

**C. Safety of Other Persons and the Community[1] & Section § 3553(a) Factors**

In addition to the analysis above, this Court must consider any potential danger to the safety of others or the community should Mr. Davis be released, as well as the factors set out in 18 U.S.C. § 3553(a). Consideration of these factors further cautions this Court against compassionate release in this case.

The § 3553(a) factors include: the nature and circumstances of the offense (including whether the offense is a crime of violence or involves a controlled substance, firearm, explosive, or destructive device); the history and characteristics of the defendant (including their character, physical and mental condition, and family ties, and whether at the time of the offense or arrest they were on probation, parole, or other release); and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a); *see also Alvarez*, 2020 WL 3047372, at *3.

On the whole, the factors weigh against compassionate release. Mr. Davis was arrested for a crime involving a firearm, while on supervised release, and with a warrant outstanding due

---

[1] The Commission's policy statement, which provides helpful guidance, provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

to failures to comply with the terms of that supervised release. *See* 3:20-cr-00032-IM, ECF 21 at 8. Specifically, after serving his sentence for a 2017 arrest for being in possession with intent to distribute controlled substances, Mr. Davis tested positive while on supervised release for cocaine on three occasions and for marijuana on seven occasions between February 24, 2019, and March 25, 2019. *Id*. at 13. In concurrence with those positive tests, Mr. Davis provided four diluted urine samples and failed to appear for two drug tests. *Id.* In total, Mr. Davis failed 12 of his 13 urinalysis tests since beginning supervision. *Id*. at 14. Mr. Davis also failed to attend mandatory substance abuse treatment on April 20, 2019. *Id*. A warrant was issued on April 26, 2019. *Id*.

On January 8, 2020, Mr. Davis was arrested for the instant offense. *Id.* at 5. Mr. Davis accidentally discharged a firearm and sustained injuries. *Id*. at 8. A search of his home and girlfriend's car revealed thirteen .40 caliber Smith and Wesson bullets and a loaded .40 caliber Kahr Arms PM. *Id.* Mr. Davis ultimately pleaded guilty to being a felon in possession of a firearm. *Id*. at 7–8.

In addition to the circumstances of his arrest, Mr. Davis has served only about one third of his sentence. ECF 67 at 4. Mr. Davis does have family ties to a long-term partner and two young children, but this does not appear to have deterred him from criminal activity since his release from state custody in 2016. *See* 3:20-cr-00032-IM, ECF 21 at 15–16.[2] Additionally, this

---

[2] Mr. Davis has an extensive criminal history going back to age fifteen, including state convictions for Assault II and Attempted Murder for two gang-related shootings committed within a period of nine days. ECF 67 at 17; 3:20-cr-00032-IM, ECF 21 at 11–13. While in custody between 2005 and 2014, Mr. Davis was sanctioned for numerous infractions, including for two assaults of other inmates, and six fights with other inmates. 3:20-cr-00032-IM, ECF 21 at 11–12. This Court is sympathetic to Mr. Davis's argument that this history reflects youthful mistakes and the negative effects of isolation while in state custody. Nevertheless, Mr. Davis's more recent criminal history still persuades this Court against compassionate release. 3:20-cr-00032-IM, ECF 21 at 11–12; ECF 67 at 18–22.

Court considered Mr. Davis's injuries and their implicit deterrent effect when sentencing Mr. Davis initially and finds no changed circumstances to justify a departure from that sentence on that basis. *See* ECF 67 at 15 (noting that the "government [ ] noted the deterrent effect of Mr. Davis's injuries in its Sentencing Memorandum"); 3:20-cr-00032-IM, ECF 28 at 3 (Statement of Reasons including "adequate deterrence to criminal conduct").

This Court has considered all of the relevant factors for compassionate release and concludes that Mr. Davis has not met the high burden of proving his case warrants compassionate release.

## CONCLUSION

For the foregoing reasons, Mr. Davis's motion for compassionate release, ECF 67, is DENIED without prejudice.

**IT IS SO ORDERED**.

DATED this 22nd day of March, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 9 – OPINION AND ORDER